IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ADRIAN BEAU BASS**                                                                  **PLAINTIFF**

**V.**                      **NO. 4:21CV00622 JM-PSH**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**[1]         **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. Introduction:**

On April 2, 2019, Adrian Beau Bass filed a Title II application for disability and disability insurance benefits, as well as an application for Title XVI

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

supplemental security income. (Tr. at 10). In the applications, Mr. Bass alleged disability beginning on January 1, 2015. [2] *Id*. On December 9, 2020, an administrative law judge (ALJ) issued an unfavorable decision, finding that Mr. Bass had not been under a disability from January 1, 2018, through the date of the decision. (Tr. at 21-22). On May 21, 2021, the Appeals Council denied Mr. Bass's request for review of the hearing decision. (Tr. at 1-3). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Bass has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. The Commissioner's Decision:

Mr. Bass met the insured status requirements of the Social Security Act through December 31, 2021. (Tr. at 13). The ALJ found that Mr. Bass had not engaged in substantial gainful activity since the amended onset date of January 1, 2018.[3] *Id*. At Step Two, the ALJ found that Mr. Bass had the following severe

---

[2] At the hearing, Mr. Bass amended the alleged onset date to January 1, 2018. (Tr. at 10).

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

impairments: seizure disorder, asymptomatic HIV, status post reduction internal fixation (ORIF) for right humerus fracture with hardware removal and manipulation, arthrofibrosis right shoulder, thrombophlebitis left cephalic vein, degenerative joint disease/degenerative disc disease of the lumbar and cervical spine, mild carpal tunnel syndrome (right), left lateral epicondylitis, complex regional pain syndrome left hand, neuropathy, and right ring finger trigger release. *Id*.

After finding that Mr. Bass's impairments did not meet or equal a Listing (Tr. at 14-15),[4] the ALJ determined that Mr. Bass had the residual functional capacity (RFC) to perform work at the light exertional level, with additional limitations: (1) he could no more than occasionally climb ramps and stairs; (2) he could never climb ladders, ropes, or scaffolds; (3) he could no more than occasionally balance, stoop, kneel, and crouch; (4) he could no more than occasionally reach overhead to the left and to the right; (5) he could frequently handle and finger bilaterally; (6) he could never work at unprotected heights or around open bodies of water or open flames; (7) he should avoid all use of moving mechanical parts and all sharp objects, such as knives and tools; (8) he should never operate a motor vehicle as work duty; and (10) and he should avoid concentrated exposure to excessive vibration. (Tr at 15).

At Step Four, the ALJ relied upon Mr. Bass's testimony and the testimony of

---

[4] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

a Vocational Expert (VE), to find that Mr. Bass was capable of performing past relevant work as a service advisor, facilities manager, and grocery store manager. (Tr. at 21-22). Therefore, the ALJ found that Mr. Bass was not disabled from January 1, 2018, through December 9, 2020. *Id*.

**III.** <u>Discussion</u>**:**

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B.   Mr. Bass's Arguments on Appeal

Mr. Bass contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, he argues that: (1) the ALJ erred when he found that Mr. Bass's depression, anxiety, and PTSD were nonsevere at Step Two; (2) the hypothetical question that the ALJ posed to the VE did not precisely describe Mr. Bass's functional limitations; and (3) the ALJ did not properly analyze Mr. Bass's reported symptoms. The Court agrees that the ALJ did not properly characterize or evaluate Mr. Bass's mental impairments.

Mr. Bass suffered from a variety of physical impairments, but the basis of this reversal stems from the ALJ's conclusions about Mr. Bass's mental impairments of anxiety, depression, and PTSD. Therefore, the Court will tailor its discussion.[5]

---

[5] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

Mr. Bass attempted suicide in April 2019, by intentionally ingesting harmful doses of baclofen and tizanidine. (Tr. at 923-941). He spent three nights at UAMS, and he told his providers there that he had attempted suicide before in 1999. (Tr. at 941-942). His doctor at UAMS diagnosed him with severe depression and wrote that his risk of complications, morbidity, and/or mortality was high. (Tr. at 927-941). A bedsitter was required for Mr. Bass while in the hospital. (Tr. at 930). He was stable upon discharge. (Tr. at 940).

Mr. Bass continued to struggle with depression, anxiety, insomnia, and PTSD throughout the relevant time-period.[6] He said at the October 2020 hearing that he had frequent flashbacks to emotional and physical abuse, and he stated that he was in fear of his ex. (Tr. at 50-53). He also felt overwhelmed by his deteriorating physical health and helpless due to the financial strain from the global pandemic. (Tr. at 1801-1802). Mr. Bass told the ALJ that he tried to beat his symptoms by going to the gym, and that he was able to do some household chores, with frequent breaks.[7]

---

The Court observes that Mr. Bass's doctors noted throughout the record that his serious physical problems contributed to his mental health issues.

[6] Mr. Bass had a history of illegal stimulants abuse, but the ALJ found that the use of stimulants was in remission. (Tr. at 13).

[7] See *Warner v. Kijakazi*, NO. 4:21CV00270-KGB/PSH Doc. No. 17 at 11 (E.D. Ark. April 5, 2022) (recommended disposition) (the Court credits a claimant's attempts to engage in daily activities to mitigate symptoms); *Judkins v. SSA* NO. 4:16CV00392-JTK *25 (E.D. Ark. Sept. 8, 2017).

(Tr. at 62-64).

Mr. Bass regularly treated with both a psychologist and psychiatrist, Dr. Fabiola Obregon, M.D. (Tr. at 56, 1746-1800). He began seeing Dr. Obregon in July 2020. (Tr. at 1746). Dr. Obregon administered multiple depression and anxiety questionnaires, and throughout 2020, Mr. Bass scored in the range that translated to severe depression and anxiety. (Tr. at 1746-1807). Dr. Obregon said that Mr. Bass's high depression and anxiety were interfering with occupation and social function. (Tr. at 1749). Dr. Obregon continually adjusted his medications. Mr. Bass told the ALJ at the hearing that he was taking anxiety, depression, and sleep medications, but he still had serious mental symptoms. (Tr. at 50-55).

In August 2020, Mr. Bass reported thoughts of death with suicidal ideas and planning. (Tr. at 1595). He continued outpatient psychiatric treatment, but consistently complained of high anxiety and severe depression, coupled with insomnia. In September 2020, his doctor at UAMS noted a history of profound anxiety. (Tr. at 1799-1802). Mr. Bass's mood was anxious and he was hypervigilant at the appointment. *Id*. His depression and anxiety remained high. (Tr. at 1805).

The ALJ found that Mr. Bass's mental impairments were nonsevere at Step Two.[8] (Tr. at 13-14). The ALJ cited to the medical opinions of the Disability

---

[8] Step Two involves a determination of whether the claimant has an impairment or combination

7

Determination Services psychiatric experts, which opinions found that Mr. Bass had no severe mental impairments. (Tr. at 84, 117). However, as Mr. Bass points out, these opinions only considered evidence through April 17, 2019, well before Mr. Bass began regular psychiatric treatment. (Doc. No. 12 at 17-18).

The ALJ mistakenly described Mr. Bass as stable or improving as of September 2020. (Tr. at 19-20). Actually, the medical evidence from that time shows that Mr. Bass was nervous, anxious, and hypervigilant, with decreased concentration and increased fatigue. Moreover, the ALJ never mentioned Dr. Obregon or his assessments. He did not mention Dr. Obregon's July 2020 statement that mental impairments were severe and were interfering with occupation and social function in July 2020.[9] The ALJ's failure to properly evaluate Mr. Bass's mental impairments was error. Reversal is warranted.

## VI. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred at Step Two.

---

of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.*

[9] An ALJ must "show his work" to allow meaningful review by the Courts. *Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 *11-12 (W.D. Mo. Jan. 14, 2019).

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further consideration of Mr. Bass's mental impairments, including obtaining additional medical opinions, if necessary.

IT IS SO ORDERED this 21st day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE